FIDELITY & CASUALTY COMPANY OF NEW YORK *v.* KING.

1. INSURANCE—KNOWLEDGE OF GENERAL AGENTS.
    An insurance corporation is bound by the knowledge of its agents who are empowered to represent it generally in the issuance of its policies.

2. SAME—CANCELLATION OF PUBLIC LIABILITY POLICY—FALSE DECLARATIONS—KNOWLEDGE OF GENERAL AGENT.
    In suit by insurer under a public liability insurance policy to cancel the policy because it contained a false declaration that a similar policy had not been canceled by an insurance company within the last 12 months, so-called "special agent" whom local agent had requested to examine premises *held*, a general agent vested with such authority as made his knowledge of the circumstances under which other policy was canceled and of the rectification of the condition the knowledge of the company.

3. SAME—CANCELLATION OF POLICY—ESTOPPEL.
    Insurance company which issued a public liability policy on premises after cancellation of a like policy by another company and with knowledge of such cancellation is estopped from obtaining in a court of equity cancellation after an accrued liability under the policy.

4. SAME—IMPUTATION OF AGENT'S KNOWLEDGE TO PRINCIPAL.
    The general rule of insurance law is that the knowledge of, or notice to, an insurance agent as to a matter within the scope of his authority, and which is acquired while the agent is acting within the scope of his authority, is chargeable to the insurer.

5. SAME—KNOWLEDGE OF AGENT OF MATERIAL MISREPRESENTATION OR BREACH OF WARRANTY.
    An insurer will not be permitted to take advantage of a material misrepresentation or breach of warranty or condition or cause of forfeiture rendering an insurance policy unenforceable

at its inception where knowledge of insurance agent relates
to such material misrepresentation or breach.

6. SAME—WAIVER OF CONDITIONS—AGENT—POLICY.

An insurer may be estopped or there may be waiver because
of its agent's knowledge or acts, notwithstanding provisions
in the policy as to the only manner in which conditions may
be waived.

Appeal from Wayne; Friedman (William), J.
Submitted June 9, 1944.  (Docket No. 49, Calendar
No. 42,770.)  Decided September 11, 1944.

Bill by Fidelity & Casualty Company of New York
against Joseph B. King to cancel a public liability
insurance policy.  Decree for defendant.  Plaintiff
appeals.  Affirmed.

*Leo J. Carrigan,* for plaintiff.

*William A. Rhodes,* for defendant.

NORTH, C. J.  This is a suit to cancel a public lia-
bility insurance policy issued by the plaintiff to the
defendant and covering certain premises on Hast-
ings street in Detroit.  The reason urged for cancel-
lation is a false statement or declaration in the policy
as follows:

"9. The insured has not had any similar insurance
canceled or declined by any insurance company with-
in the last 12 months, except as follows: NO EX-
CEPTIONS."

The fact that the defendant had had similar in-
surance cancelled or declined within 12 months is
not disputed.  After hearing, a decree was entered
dismissing the bill of complaint.  Plaintiff has ap-
pealed.

Seymour J. Cohn was a duly licensed local agent for the plaintiff company. He was also agent for the New Amsterdam Casualty Company. Mr. Cohn, a witness for the defendant, testified that about two weeks prior to February 11, 1943, he learned that defendant was desirous of purchasing insurance on the Hastings street property, and in a preliminary discussion between defendant and Cohn the latter learned there had been a previous cancellation of insurance by the New Amsterdam Casualty Company. Cohn further testified he called the New Amsterdam Company, found out the reasons for the cancellation, learned that changes in the property previously recommended by the company had been made and requested the New Amsterdam Company to reinstate or rewrite the policy. The New Amsterdam Company said it would do so but only for the original agent (not Cohn). Cohn testified he then called the plaintiff company, explained the entire circumstances and requested a special agent of plaintiff company named Wood to inspect the property and also approve boiler insurance coverage thereon. This boiler insurance was later written but is not here involved.

The policy in suit was written February 19, 1943, as coverage from February 11, 1943. A few days after Cohn mailed the policy to defendant, he asked Cohn if an additional building at the rear of the Hastings street property was covered by the policy. Cohn said he called the plaintiff's Detroit office where the policy was written, found the additional building was not covered, and immediately he requested an indorsement extending the coverage to the additional building. That indorsement was issued as of February 25, 1943, and sent to the defendant. On cross-examination Cohn testified the policy

was actually written by plaintiff and that his only record was a copy called a ''daily,'' and although he received his copy shortly after the policy was issued, the first time he examined it was just prior to March 17, 1943. His agency was terminated by plaintiff company April 21, 1943; and he testified such termination ''was by reason of the controversy in this matter.''

Defendant King's testimony regarding the purchase of the policy was similar to that of Cohn. In addition he testified that a man by the name of Mr. Wood who represented himself as being from the plaintiff company interviewed him, that Wood inquired as to whether the changes recommended by the New Amsterdam Company had been made and was informed that they had. The record contains no testimony challenging the truth of this latter statement. An accident within the insurance coverage occurred on the insured premises March 17, 1943. King reported the accident to Cohn. Later King received a letter from plaintiff dated April 12, 1943, purporting to cancel the policy. King testified he had never read his policy or the subsequently issued indorsement, although he said ''I glanced it (the indorsement) through.'' Plaintiff sought to prove that defendant misrepresented a material fact in his oral application for the policy, and asserts that this misrepresentation constituted a fraud entitling plaintiff to cancellation. But defendant contends that no fraud was perpetrated because, while negotiations for the policy were pending, plaintiff through its agent Wood was apprised of the true facts; and although the recital first above quoted from the policy is admittedly untrue, plaintiff, in whose office that recital was written in the policy, by reason of its knowledge of the true facts waived its

right to relief and by its possession of full knowledge prior to the issuance of the policy is estopped from being decreed cancellation thereof.

It appears from the record that plaintiff maintained a general office in the city of Detroit through which its policies were issued. Being a corporation, plaintiff of necessity acts through its agents; and it is bound by the knowledge of such agents who are empowered to generally represent the corporation in the issuance of its policies. We think this record fairly discloses that Mr. Wood, notwithstanding he is referred to as a "special agent," was in truth a general representative of plaintiff company vested with such authority as makes knowledge possessed by Wood knowledge of the company. His initials appear at the foot of the policy issued in this case, and the record indicates that it was Wood who dictated this policy to the stenographer who prepared the same. Mr. Wood's initials also appear at the foot of the indorsement which was later issued. The witness Cohn in his testimony referred to Mr. Wood as the "inspector;" and according to undisputed testimony Wood acted in that capacity in the instant case prior to his having dictated and issued the policy. The undisputed testimony is to the effect that at the time Wood was making his inspection he was fully advised of the true facts material to this litigation. Thereafter, upon Cohn's application to plaintiff's Detroit office, the policy was issued and through Cohn delivered to plaintiff. Under such circumstances it must be held that plaintiff company is charged with the knowledge possessed by Wood, and having issued the policy with such knowledge plaintiff is estopped from obtaining in a court of equity cancellation after an accrued liability under the policy.

Notwithstanding Wood was present at the trial of this case, he did not take the stand as a witness. The circumstances from which it must be concluded Wood was a general agent of plaintiff company are not in dispute, and likewise the testimony as to Wood's knowledge is undisputed. The trial judge who saw and heard the witnesses believed their undisputed testimony and reached decision in accord therewith.

Plaintiff-appellant relies upon the clause in the policy which reads:

"Neither notice given to, nor the knowledge of, any agent or any other person, whether received or acquired before or after the date of this policy, shall be held to waive any of the agreements, provisions, or declarations of this policy, or to preclude the company from asserting any defense under said agreements, provisions, or declarations unless set forth in an indorsement added hereto and signed by one of the said officers."

Notwithstanding the quoted provision of the policy, plaintiff is not entitled to cancellation. A case strikingly similar in both its factual and legal aspects, particularly in that the policy included a clause of like effect to that above quoted, is reported in *Hawkeye Casualty Co.* v. *Holcomb,* 302 Mich. 591. We think our decision in that case, denying cancellation, is controlling of the instant case. We therein quoted with approval the following:

"The general rule of agency that the principal is chargeable with, and is bound by, the knowledge of or notice to his agent received while the agent is acting within the scope of his authority, and which is in reference to a matter over which his authority extends, is fully applicable to agents of insurance companies. The general rule of insurance law is that

the knowledge of, or notice to, an insurance agent as to a matter within the scope of his authority, and which is acquired while the agent is acting within the scope of his authority, is chargeable to the insurer. Where such knowledge of an insurance agent relates to a material misrepresentation or breach of warranty or condition which would otherwise render the policy unenforceable at its inception, the insurer issuing the policy will not be permitted to take advantage of such breach, or cause of forfeiture. (29 Am. Jur. p. 612, § 808).   *   *   *

"Assurer may also be estopped or there may be a waiver by reason of its agent's knowledge or acts, notwithstanding provisions in the policy as to the only manner in which conditions may be waived by the agent. (3 Joyce on the Law of Insurance [2d Ed.], p. 3243, § 1973.)"

As authorities in the field of the instant case, see *Blake* v. *Farmers' Mutual Lightning Protected Fire Ins. Co. of Michigan,* 194 Mich. 589; *Wilds* v. *Fidelity & Deposit Co.,* 239 Mich. 396; and *Johnston* v. *Manhattan Fire & Marine Ins. Co.,* 294 Mich. 550.

The decree entered in the circuit court is affirmed. Costs of this Court to appellee.

Starr, Wiest, Butzel, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.